Good morning, your honors. My name is Richard Paul. I'm here on behalf of the plaintiffs and appellants in this case. In this appeal, we are asking the court to explore what I believe are the outer reaches of the Securities Litigation Standards Reform Act. Standards Act, sorry, which is a broad act. We are not asking this court to construe it narrowly in any way. What we are asking is that the act be construed consistent with its stated purposes, which is to effectuate the Private Securities Litigation Reform Act, the PSLRA. In Sluice's own words, it applies to state law class actions that would frustrate the objectives of the PSLRA. And that is our primary contention in this case, is that neither the district court nor Pacific Life in its briefs to this court have argued how this case frustrates the objectives of the PSLRA. There are no... Well, what was the purpose of the Sluice? The purpose of Sluice is to effectuate the PSLRA. There clearly were loopholes. People were running to the state court and filing what were historically... Class action fraud claims. Correct. And so they're trying to stop that from happening? That's correct, Your Honor. And your allegations sound very much like a disguised fraud claim. This is not that, and I guess that's really the primary contention. You say deducted premiums under the guise of cost insurance charges, the true mortality charges, hidden loads, wrongfully diverted funds, concealed and denied, concealed this. And it sounds very much not like a breach claim, but a fraud claim. Your Honor, I think that the key fact here is that we allege those things because we were intending to extend the statute of limitations under a tolling argument. If we remove all of those facts, let me back up for a second. Why does it matter why you are making the allegations? You made them. Because the claim, the gravamen of the claim, what is the central premise of our claim? It is that they charged too much, contrary to the terms of the policy. And let's just say this was a computer glitch, and they established the price for the charge for the cost of insurance, and due to a computer glitch they charged too much, we would have the precise same claim. We shouldn't have the prudent intent. You didn't allege it that way. You didn't aver it that way. I mean, it very much reads like a fraud claim. So you were trying to get the benefit of a fraud statute of limitations? Is that what you're telling us by putting all this language in there? No, we're not asking for a fraud statute of limitations. We're asking for a tolling. And a tolling based on what, fraud? Based on that the policyholders had no reason to know and no ability to find out that they were being overcharged contrary to the terms of the policy. Because of deliberate concealment and disguising and all that kind of stuff? Clearly, because it was being concealed. You're trying to have the best of both worlds, and you walk backwards right into the prohibition, don't you? I don't think so, and I think that is where we are talking about. What is the central premise of this claim? If we pull out the tolling argument and we say they charged too much contrary to the terms of the policy, I don't think we would be here today. But then would you get nailed by the statute of limitations if you pulled that out? We wouldn't. We would have the claim, but the statute would be shorter. And would you be blocked by it? I mean, you must have been afraid that the statute was going to end your case. Well, I think the issue is that people should be entitled to a refund. I'm hearing you say if we back all this stuff out, we're blocked by the statute of limitations. And that is not what I'm saying at all, Your Honor. I'm saying that they should be entitled to a refund of all of the excessive charges during the time that they held the policy, not to extend to a longer statute of limitations based on fraud or anything like that. It is they had no ability to find out, and therefore, when they did find out, the statute shouldn't go back to whatever the breach of contract statute of limitations is. I don't believe. Where in your complaint do you say tolling? I'm making these allegations. There is an entire section in the complaint that says tolling. Oh, I see it now. Okay. Your Honor, the nature of this case, hidden loads is a concept that is an industry term of art. It isn't. Which industry? The life insurance industry. Not the securities industry? What's that? Not the securities industry? I don't know. I don't think so, because load is an insurance term for expense. And so I don't know how that term would apply in the securities industry. Does it apply to mutual funds? Absolutely. No-load funds. No-load funds. You hear that all the time. Everybody tells you no-load funds. You're right. I hadn't made that connection, but it does. The issue is still expenses, which don't go to the value of this security. I understand in a mutual fund people are going to price that fund based on it affects their return. That's a different issue than charges. Here we have a variable universal life policy, which has a death benefit combined with an investment component. And it is the investment component that pulls this into a security. If you lose today, what are your clients left with? I think that's really unclear, and I think that's the problem. That's why I'm asking. And I'm telling you I don't know the answer to that. It is, I think, kind of the reverse situation of what you would expect, where Pacific Life is saying this is securities fraud, and we're saying really all we want to do is enforce our contract right. Well, you're doing more than that. You claim a breach of the duty of good faith and fair dealing. You claim unfair competition. You ask to enjoin and just gorge all monies taken as a result of unlawful conduct. It's not just a breach of contract claim. Your Honor, there are, and we've cited a number of them in our brief, but there are at least 10 similar cases out there proceeding in state and federal courts across this country on a simple breach of contract claim. There are others that are proceeding on additional Consumer Protection Act claims. None of them have been drug into SLUSA, and I think that's one of the critical points here is that some of those cases involve just universal life policies. There's no security component, and so SLUSA has no effect. Some of those involve. There's a security component here, so you just told us those other cases are different. But I don't think that's a meaningful distinction. I mean, you're dealing with a security here. This case involves, as we pled the class definition, both universal life, non-security, and variable universal life, security. The claim applies to both equally, and that's our contention, why this shouldn't be drug into SLUSA is because it applies equally. This is not a claim that is typically brought as a securities fraud claim. There's no case out there that's been cited this quarter that I could find where a similar case is being brought as a securities fraud claim, and that's why I say I don't know to your question because I think we would be making new law. We would be expanding the PSLRA and securities fraud claims into an area that I've not seen it expanded into. In order to reach your breach of contract theory, does the court need to determine that there was fraud? The distinction that I think the cases have now drawn is that fraud does not have to be an element of the claim, but it has to be part of the scheme that's alleged. There has to be. Yes, but I think what you're telling us is that your claim for breach of contract cannot survive a motion to dismiss on the statute of limitations unless you prove fraud. Is that true? No, that's not what I'm saying at all. So what's your theory of tolling? The theory on tolling is to extend the recovery period for damages. What's the purpose? What's the theory? The theory is that the policyholder could not have known that Pacific Life was not complying with the terms of their policy. But because of concealment and fraud? Sure. Okay, so I return to my question. If to succeed on your breach of contract theory you need to prove fraud, what implication does that have? I don't think that the standard for tolling and fraud are the same, I guess would be the first distinction I would make. All right, no misrepresentation, concealment. Okay. At all. We don't need to prove the tolling argument to prevail in this case. We could lose tolling and still have the case. We would just have a shorter statute of limitations. The recovery period for damages would be shorter. But we could lose tolling and still prevail. I'm curious about this. You drafted your complaint as you drafted it, and the district court bounces it on sleuther grounds and gives you a chance to replead, right? Am I remembering this correctly? No, we amended, based on a local rule, Pacific Life called us, said we intend to move to dismiss on sleuther grounds, and then we amended. So we amended before. So you were aware of this issue. That's correct. And you amended. That's correct. And you didn't remove all the fraud allegations for reasons you've explained. That's correct. We did remove a lot of those buzzwords, and I think that's where the courts have come out, is that the courts need to get past the buzzwords. Their case is premised on the presence of buzzwords. I think the courts have held you get past the presence or absence of buzzwords, and you look at the core of the case. It's not just buzzwords, though. I mean, your theory is your statute of limitations has been extended because of fraud, misrepresentation, concealment. That's one of the essential components of your case. Now, bear with me. You could have stripped it down and just said, all right, we'll live with the statute of limitations restriction. We're just going to lodge a breach of contract, and you chose not to. I mean, that's an election. That's maybe a good election, maybe a bad election. But you didn't excise fraud, concealment. Yeah, I'm here to say we really don't have a breach of contract claim. That's not at all what I'm saying. And as we've cited in the case, there are numerous cases that are precisely the same claim that are proceeding in state and federal courts across this country as breach of contract claims. Class actions. As class actions. There's just numerous cases just like this one. And this is the only one that's going to. Where they use all the words that you want to dismiss as buzzwords. You know, I haven't looked at the complaint in all of them. You know, clearly I have filed some of those, and I have not sought tolling, and I have not used the buzzwords, and I didn't get the motion to dismiss. And I think that's the problem here is these claims are no different. The problem is the way you pleaded the case. Well, the problem is we use buzzwords. Yes, we ask for tolling. I react very negatively to things like buzzwords. I mean, you're just trying to dismiss things by putting a pejorative label on them. And it doesn't get it. I don't think it gets us anywhere to say it's a buzzword. I don't either. I think that's my point is we need to look to what the case is really about. And I don't think. You're trying to minimize what you did by calling them. Don't pay any attention to them. They were just buzzwords. I am minimizing them because I don't think they're core to the claim. We cannot prove any of them, and we still prevail. And I don't think it's fair to say that because tolling is an issue in the case, that that can drag this into SLUSA, when if we had not sought tolling, we wouldn't be dismissed by SLUSA. All right. Let's assume that. Let's take your breach of contract theory out of the case. Do you concede your breach of the covenant of good faith and fair dealing and your unfair competition claims are preempted? I think certainly the unfair competition claim is. . . I don't know that I want to concede it, but certainly that's more into the core of where SLUSA is targeted at. And I think the good faith and fair dealing claim is even closer as well. But the breach of contract is different than those two claims, and there isn't anything about their state of mind, their intent. As I said, this could be a computer glitch, and we would still have the same case. Okay. Thank you. Thank you. We'll go from the other side. Good morning, Your Honors. James Martin for Pacific Life. Please keep your voice up. I will. Thank you. Your Honors, we know that there is no immunity for contract claims from SLUSA. That comes from the U.S. Supreme Court's opinion in Dabbitt, which was pled as a breach of contract claim. And as counsel said, SLUSA is not about the specific elements of a cause of action. It's about the core conduct that the complaint is aimed at. When you know that the core conduct implicates covered securities, under state law, and you have a large class action, you have the basis for SLUSA preclusion. I don't know what happened in the So you're saying that if an insurance company can characterize its policy as a security, it becomes immune from breach of contract claims? No, Your Honor, I'm not. SLUSA doesn't take aim either at any specific kind of cause of action. It's a preclusion statute for class actions. So what SLUSA does do is prevent that kind of claim from being packaged into a state law class action. So you agree that this Court erred by dismissing the individual claims, right? The individual claims weren't pled, and so I don't agree that the Court erred in dismissing It said on behalf of themselves and their class, right? They did, Your Honor, but each of the claims in this complaint was brought as a class action. And under SLUSA, no complaint where all the causes of action include class allegations can survive dismissal. That's expressed in the statute. No class action may proceed. So the alternative here was to plead this case only as an individual claim. Well, I don't understand. Why can't you plead a claim in the alternative as a class action individual claim? And if you strip away the class allegations, why doesn't the thing remain as an individual claim? I mean, you say, well, okay, you can't proceed as a class action, but they still have allegations for themselves individually. They do, Your Honor, but the way this complaint is put together, each of the causes of action has SLUSA preclusion elements in it. And the Court said you can't proceed on those. Right. So those parts of the complaint, you just take a big black felt marker and you cross them out. And when you're done with that, you're left with individual claims. In Proctor, this Court actually held exactly the opposite. The Court held that causes of action that included SLUSA precluded claims in them, and this is every cause of action in this complaint, should be dismissed under the statute because the statute says that Proctor made an analysis   Just say which case. This one.  This one, you know? PROCTOR.   Across Sulu. This cause of action by Caustic.  In the case? Yeah. When Proctor divided the complaint okay, I'm sorry, Your Honor, I don't have the page specifically in front of me, but I think that the. You have the case there? I do, Your Honor. The analysis appears at 1226. Okay. That's a page. SLUSA unquestionably requires dismissal of the precluded claim, but it does not require the dismissal of other non-precluded claims as well. Okay. Now, in the Proctor case, the claim that was dismissed was the SLUSA precluded claim. The claims that survived had no SLUSA triggering allegations in them. Okay. But you made a broader assertion for Proctor, which is why I question you. You said Proctor says that anything that has, any complaint that has SLUSA allegations has to be dismissed. Any cause of action that includes SLUSA precluded allegations in it should be dismissed. What was carved out in Proctor were allegations in the complaint and causes of action in the complaint that met exceptions to SLUSA. They didn't include SLUSA precluded claims for that reason. Such as? Exceptions such as? The Delaware carve-out was the principal argument in the Proctor case, and Delaware carve-out is an express exception. So, again, it is possible that a claim could have been brought here as an individual claim, alleging a breach of contract or unfair competition in the fashion that this complaint does. The question for the court really is, did Judge Carter abuse his discretion by dismissing this complaint without prejudice as the defendants requested? Yeah. Exactly. I mean, why? It's obvious. It may not be obvious, but it seems to me that there are salvageable claims here. So it's hard for me to see why the district court shouldn't have granted leave to amend. Well, leave to amend wasn't requested, Your Honor. That's why I was asking earlier, what are you left with? Right. You don't seem to say, well. Well, if we are going to analyze this, as the Saxton case says, as an abuse of discretion, then look at the record in front of Judge Carter. We made a motion to dismiss the entire complaint with prejudice. That was what the motion requested. That's what we said the SLUSA statute provided for. And that's what our order said that was submitted. In response to that argument, the claim was never once made by the plaintiffs that we ought to be able to amend or our individual claims should go forward. They tried to hang on to the class action concept. Across the board. No motion was made to reconsider the judge's decision once he made it. All right. I take your point. But I gather what you're saying is that you believe that if the motion had been made, it would have been granted or it should have been granted. I'm saying that that would be a different record and there might be a basis to begin an argument for whether discretion was abused. That argument can't get started in this case because of the waiver. It also shouldn't get started because Judge Carter. What waiver? Well, they never requested an amendment. They never requested to go. Forfeiture. I'm sorry. Forfeiture, if that's the term. The argument was never made in the court below, Your Honor, and so it would not be preserved in this court for purposes of appeal. When you look at what Judge Carter did, the statute certainly provided the authority for him to do that and to characterize that as an abuse of discretion when the argument wasn't made and the statute provides for it. I completely understand your point on this issue. Why don't you go back and talk about the main argument, the question. They say, look, this is a breach of contract claim. We threw in claims of fraud and misrepresentation so we have a longer period of relation back in terms of the statute of limitations, but it's fundamentally a breach of contract claim, which has nothing to do with securities fraud. Why is it not right? First of all, if we look at the purposes of SLUCI, Your Honor, it is to take aim at. I don't want to talk about the purposes of SLUCI. I want to talk about this complaint. So why isn't this right? They say, look, we have a breach of contract claim. You guys misrepresentation. We, our clients and other similar situations have contracts with the defendant and they breach the contract. And what's more, they were sneaky about it. They not only breached the contract, but they hid it from us so we couldn't discover in time to bring the suit earlier. Right. Why isn't that a perfectly fine claim? Well, Your Honor, it would be, but that's all divorced from the context of this case and what SLUCI is aimed at, and I really do need to begin at the beginning here. The original complaint in this case was much more than a breach of contract. It was conduct that was alleged to be systematic, deceptive. That complaint is gone. Well, Your Honor, it's not gone. As this court's Saxton U.S. mortgage case shows, a pleading context does matter, and we have cited dozens of cases that indicate that pleading context does matter and it goes straight to the heart of SLUCI. When you know you have a claim that has this kind of systemic conflict of interest in it where the defendant is benefiting by obtaining fees through the purchase and sale of securities, you are at the core of what the securities law cares about. Now you plead that as a state claim, whatever it happens to be. Breach of contract, breach of fiduciary duty, as was done in the DABIT case or as was done in the U.S. mortgage case, and you're called on it. That's a SLUCI-precluded claim. It hits at the core of what the statute is about. Where are those life insurance cases? Well, there are dozens of them. There are several life insurance cases where this exact analysis is applied, Your Honor. They're not immune from it. I think you just mentioned it. I'm sorry? The cases you mentioned, life insurance cases? No, but we have cited several of those in our brief. DABIT was the U.S. Supreme Court case that aimed at the conduct that arose from these kinds of conflicts of interest that affected the price of the securities and said that is core at what SLUCI is aimed at. That's what we had here. The difference is you have life insurance. You can't really trade life insurance away into securities. This is a product you buy that's individual. You can't really go on the market. I don't think you sell your life insurance, right? So it is sort of different from a pure securities claim. It may have securities aspects to it, but unlike a lot of securities cases, we are actually buying securities from the. . . You know, when you say it right like that, you're saying stop talking so I can answer the question you think you're asking, which not only distracts me from the question I was asking, but it tells me that you're not really listening to what I'm asking. I'm sorry, Your Honor. What you're going to do is you're going to answer the wrong question, and you're going to miss the opportunity. You're going to wake up in bed tonight and say, gosh darn, I wish I had listened to that question and answered it. I was simply trying to follow the question, Your Honor, and if that was off-putting, I apologize. You were not listening. I was listening, Your Honor. I don't think you were. Okay. Just listen to the question and try to answer it. Think about it. I will, Your Honor. Thank you. Okay. So you've got individuals who buy. . . They're not trained securities. It's not like somebody goes on the market and buys, if I were to buy GM stock or something on a securities market. Here there are people who actually sign contracts ensuring their life. So they actually have real contracts with the defendant. And they say, look, there may be a statute out there dealing with securities. This may, in fact, qualify as some sort of securities under some broad definition of securities. But the fact is I have a breach of contract claim. They told me one thing, and they lied. They did something else. Where does. . . Why isn't that perfectly fine under SLUSA? Your Honor, I think that does come back to the Dabbitt case, and it does come back to this court. The Supreme Court? Yes, Your Honor, it does. That was a life insurance case? No, Your Honor, but in. . . That was a case where they had a contract with the issuer of securities? Yes. They did? In Dabbitt? I'm sorry, Your Honor, in Dabbitt. They had a contract with the issuer of the security? Your Honor, the contract. . . I'm asking a question. Yes or no, I don't know. It was one of those three things. No. Your Honor, they did not. All right, so why is Dabbitt relevant to my question when I'm saying is this a situation where you actually have a contract with the issuer of security? Now, you say Dabbitt. You've got to explain to me why when my question specifically deals with somebody who has. . . if you're listening. Yes. Listening? Yes. Yeah? Yes, Your Honor. Did you hear what I said? I did. If you're dealing with a case where somebody has an actual contract with the issuer of security, okay, why does Dabbitt matter, which is not a case dealing with that kind of situation? We couldn't have a breach of contract claim. Because the language of SLUSA is that the offending conduct has to coincide, touch, or concern the purchase or sale of a security. That's the Dabbitt standard. Here, with. . . But in Dabbitt, there was no possible breach of contract claim. Breach of. . . I'm sorry, Your Honor. I interrupted. I'm sorry. So we don't really know what happens when you have something that is both a possible securities claim and also a breach of contract claim. Because, as you said, in Dabbitt, the plaintiff did not have a contract with the defendant, right? Some of the plaintiffs pled breach of contract in Dabbitt. And let me back up and retool. Your Honor, Dabbitt, the affirmative. . . The answer was yes to my question? In Dabbitt, the affirmative claims that were pled that the Supreme Court addressed dealt with breach of contract and breach of fiduciary duty. Those were the State claims. Some of the plaintiffs in Dabbitt had contracts with stockbrokers that related to the purchase and sale of securities. But not with the issue of securities. That's correct. I answered no to that, Your Honor. They dealt with the brokers, right? Yes. Okay. And I'm saying why does that apply to a situation where you actually have a contract for a product with the issue of security? You're not buying security. You're buying life insurance. Right. Because the court. . . I see that as a material distinction. You obviously don't. And maybe you can persuade me that it's not a material distinction. Well, the reason that it's not a material distinction in this case also goes in part to this Court's decision in Patten-Newade, which looks at the securities component of the variable life insurance contracts and analyzes whether or not the conduct involved touches or concerns the purchase or sale of a security. And it looks at the regulated portion of those investments under the Investment Company Act and under the Securities Acts themselves and says, that is a covered security under SLUSA. Here, the conduct directly relates to the covered security under SLUSA. Let me ask you a hypothetical, if I might. And this may get to what you're trying to say. Let's assume hypothetically that they just pled a breach of contract theory, all right, and had asked for damages that extend way beyond the breach of contract statute of limitations period. You make a motion to say, no, we have to limit the damages to the statutory period. They come back and say, well, this is told because of fraud, concealment, et cetera. Do you think that suit is preempted by SLUSA, posited that way? Your Honor, I think that it could be, yes, because the core conduct in that case is still the same core conduct, which is the hidden charges applied after the premiums are paid to the purchase or sale of a security. And in that circumstance, the case law tells us that because the conduct is not disclosed, because it's a conflict of interest, and because the insurer is benefiting from that, that is a core concern of the securities law. It's a parallel. Only raised in response to an affirmative defense? Yes, Your Honor, because SLUSA, again, is conduct specific. That's what it cares about. It cares about the core conduct that's at the root of the claim. Now, this case, Your Honor, is a little bit more straightforward than that because what plaintiffs are trying to avoid here is the pleading history with this claim. And the Saxton case from this circuit, Judge Smith's opinion, says you can't do that. I agree. The context doesn't matter to a certain extent. But on the other hand, why would you ever grant leave to amend if the complaint's fatal at the onset, the first complaint? I mean, you may know with SLUSA motion they tried to amend. You can't just say now that they're forever barred from amending and we're out of trouble. I think you can, Your Honor, for this reason. SLUSA was an effort to say we do not want State law class actions that potentially implicate covered securities in the fashion that the statute intends, making an end run around the statute.  I'm sorry, Your Honor. I'm looking at Pat and Uwe, and I noticed that these were separate. When variable annuities are sold by insurance companies, they must be offered through separate accounts as described by the Investment Company Act, and they must be registered with the SEC. Those were securities registered with the SEC. There's nothing like that here, right? These are just people buying life insurance. No, Your Honor, they're not. The variable accounts work exactly the same way as they do in Pat and Uwe, and our briefing in the record makes that clear. There's an investment. What they bought here was registered? Yes. These variable life insurance policies have direct grounding in the Pat and Uwe facts. The investment accounts work the same, and the value that changes as a result of the expenses relates directly to the purchase and sale of covered security. To finish my response quickly on Judge Thomas's question, now we know in front of us we have an action that is sleutha precluded, and the case law establishes, and this is in fact what Saxton was about, if you then bring that same scheme and that same conduct back and you disguise it as a breach of contract claim without the sleutha preclusive language, the courts won't permit that claim to go forward because you know now you have in front of you what the statute was intended to prevent, and that is a claim with core conduct in it that implicates sleutha being pled as a state law class action. In Saxton, that was exactly what the plaintiff attempted to do. They had a sleutha precluded claim. They were given leave to amend. The amendment sanitized the complaint of the operative terms that made it apparent that it was a systematic manipulation by the defendant, and this court said no to that as courts in other circuits and district courts have said across the country. Sleutha, in the words of the Sixth Circuit, cannot be tricked. That is what would be going on here, so this case stands on a very, very different footing because of that pleading history which is relevant to whether this complaint survives. Coming back to my point before, also, there was no attempt here to try to avoid the class action allegations or to suggest that this complaint was anything other than what it is, and that's an attack on conduct by the defendant that is an apparent conflict of interest that earns the defendant's fees that directly come from the purchase and sale of the security. Does the securities law care about that conduct? Yes, it does. That's the functional equivalent of what was going on in the Zandford case, which was the case relied on in Dabbitt to extend sleutha to any transaction that touched or concerned a security just as these transactions do here. So whether we begin with the statute or we begin with Dabbitt or we follow through with this court's own opinions, we get to a dismissal. The contract claims that have survived in this circuit, Your Honors, are ones that are completely divorced from the sleutha preclusive types of conduct, the hidden charges, the fees that affect the values of securities. In the Falkowski case, it was just a straight contract interpretation on what a provision meant. Thank you. Thank you, Your Honor. Oh, it's time. No wolves in sheep's clothing. Your Honor, it's time as well. I'll give you a minute for rebuttal. Thank you. To me, you seem to disclaim any interest in individual causes of action. No, I don't intend to do that. When I asked you what are you left with, you just said we're out. Yeah, that's why I wanted to speak again because I think I misunderstood your question. I certainly don't mean to imply that we're out. What I meant to say is I don't know enough about 10b-5 or Section 10b to know how to plead this case under those statutes because that's not the kind of work that I do. That's what I meant by I don't know. If we get clarification. You don't know. I got you. Yeah. Now, if we get clarification on what this is, look, I've learned a hard lesson about pleading this, which I'm going to have to take with me for the rest of my career. Your colleague and momentary opponent says, but you never tried any of this individual cause of action business. You had any number of opportunities. You simply tried to hang on to the class action vehicle. Well, we tried to hang on to our case because I believe that we're right about this. I don't believe that. What about the Saxon case? I mean, as I mumbled under my breath, it sort of says no wolves in sheep's clothing. We see the wolf. We tell you you can't bring the wolf in here. You can't put a sheep skin on it and claim it's now a sheep. What about the Saxon case? Let me see if I can get at it this way, Your Honor. You've read the Saxon case. I have. Okay. And I'm going to try and answer your question because this is how I approach it. There's an investment component and the death benefit. This charge, the cost of insurance charge, pays for the death benefit, not for the investment component. So this claim, this breach of contract claim, relates to the death benefit. Pacific Life's argument is that any time a policyholder makes a payment, it gets put into the investment component and then withdrawn to pay for the death benefit. Therefore, everything that a variable universal life policyholder ever does relates to the security component and, therefore, is barred by SLISA. And I think that's way too broad because we have now taken it. That's the rule of law. But the way it's described is accurate. The way what it's described? You said the other side describes it as it goes in and then it comes out. That's accurate. That's the way the policy describes it, whether that's in practice what they do, I don't know. But that's the way the policy describes it. And, again, what I fear we've done. You're trying to split the atom, though, then, aren't you? What I fear we've done, Your Honor, is that we're precluding variable universal life policyholders from ever having a breach of contract claim. There's no way to enforce your claim because in a class setting. Class setting. Agreed. I understand. But we've now said if you bought universal life, then you've got that claim. But if you bought variable universal life, everything about it touches the security. If you had to take these as individual breach of contract claims, just out of curiosity, how much is each one worth? It depends on the amount of the policy. Do you have a sense? I do. How much? It's going to range from several hundred dollars to a few thousand dollars. Not anywhere near $75,000, let's say, for diversity. That's correct. And if, as the district court held, we don't count the universal life component of the class definition here, then we would have the securities exception to CAFA, and we wouldn't even have CAFA jurisdiction. So we would just be in state court. Right. You wouldn't have diversity. You wouldn't have supplemental jurisdiction because federal claim is gone. As a matter of preclusion, where does the district court dismiss leave you? Are you free to bring the cases in state court? You may not know the answer to this. This is a civil procedure question. It is unclear, and that's, I guess, why we asked for clarification about the prejudice. There's no point in having the district court give you leave to amend to plead individual claims in federal court if it's perfectly clear that you can't possibly meet the individual amount of controversy requirements, right? Correct. And standing there, you've conceded that you couldn't possibly, as to any of your clients, come up to $75,000.01, right? That's correct. So sending it back, let's say, or having the district court say, okay, re-plead wouldn't do any good, right? We would be in state court, not in federal court, Your Honor. The question really is what effect does this complaint have on your chance to go back to state court, right? That's correct. If the judgment is there. That's correct. Well, I want a quick question, if I might. I gather from your answers that you would not be interested in granting leave to amend to assert a pure breach of contract theory that did not involve tolling. That's not true. I think if, again, I think we need clarification on what it is about the breach of contract case, that if it's just the tolling allegations of concealment fraud. I mean, it's pure you breached the contract without any component that addresses concealment fraud. As I've said, Your Honor, I have filed other of these cases against other insurance companies, and I have left out the tolling argument. I have not faced the sluice argument. No, I understand all that, but that doesn't matter here. I'm just asking you. Well, I think that's the. Go ahead. I think that's what I would do. I certainly would leave out the tolling argument if I was to replead and just plead straight breach of contract, no other claims. It would have one count, and it would be breach of contract, and I wouldn't allege their intent in doing so. Well, you can confront the tolling argument when it comes time to assess damages if you get to that point, right? Correct. Okay. Thank you very much. Cases are to be submitted. We are going to be in a five-minute recess. All rise. Recess for five minutes.
judges: Kozinski, Trott, Thomas